IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH LAKE, individually and on behalf of all persons similarly situated, | ) ) ) |
| Plaintiff, | ) No. 07 C 2742 |
| v. | ) ) Judge Robert W. Gettleman |
| LANDGON NEAL, Chairman; RICHARD COWEN, Secretary; MARISEL A. HERNANDEZ, Commissioner; LANCE GOUGH, Executive Director; MEMBERS AND DIRECTORS, respectively, of the CHICAGO BOARD OF ELECTION COMMISSIONERS, | ) ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joseph Lake filed a second amended complaint alleging a violation of the Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. §§ 2721-2725 (2007), against the Chicago Board of Election Commissioners (the "Board") and its members, Richard Cowen, Lance Gough, Marisel Hernandez, and Langdon Neal ("Board Members") in their official capacities. Plaintiff's original complaint alleged a civil rights action under 42 U.S.C. § 1983 for violations of the DPPA, the National Voter Registration Act of 1993 ("NVRA"), and the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment. All that remains of the original complaint is one count alleging a violation of the DPPA. Defendants move to dismiss the action for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, the court grants defendants' motion.

# **FACTS**[1]

On or about July 2, 1998, plaintiff applied for a driver's license through the Illinois State Department of Motor Vehicles. Pursuant to the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. §§ 1973gg-1973gg-10, plaintiff checked a box, which simultaneously registered him to vote in the state of Illinois by sending his information to the Board. Congress passed the NVRA to increase voter participation in federal elections by making it easier to register to vote. 42 U.S.C. § 1973gg.

In April of 2007, Peter Zelchenko went to the Board to access personal information about plaintiff from plaintiff's voter registration information. Zelchenko had done this on many prior occasions to gain information about voters. The personal information about plaintiff that Zelchenko acquired included his name, date of birth, sex, address, former address, phone number, and social security number. All of this was done without the plaintiff's consent. Zelchenko then used the information to contact plaintiff.

On May 16, 2007, upon learning that Zelchenko obtained his personal information from the Board, the plaintiff instituted this putative class action suit against the individual members of the Board and the Board itself, as well as the Illinois Secretary of State Jesse White. Plaintiff voluntarily dismissed the claim against the Secretary of State.

Before plaintiff brought this action, Zelchenko had filed a putative class action suit in Illinois state court alleging that the Board unlawfully disclosed his personal information. Plaintiff was a member of the putative state class. The instant action was stayed pending

---

[1]These facts are taken from plaintiff's complaint and are presumed true for purposes of this motion to dismiss. R.E. Davis Chemical Corp. v. Nalco, 757 F.Supp. 1499, 1505 (N.D. Ill. 1990)

resolution of the state court action. The state court action was ultimately dismissed with prejudice. Plaintiff filed a second amended complaint in the instant action. Defendants now move to dismiss plaintiff's action pursuant to Fed. R. Civ. P. 12(b)(6).

## **DISCUSSION**

"A suit against individuals in their official capacity working for a local government unit is essentially a suit against the local government unit." Bruce v. South Stickney Sanitary Dist. 2001 WL 968726 at *2 (2001). Therefore, the actions against the individual members of the Board are no different that the action against the Board itself and are dismissed.

In 1994, Congress passed the DPPA in order to protect the privacy of individuals whose information is registered with their local Department of Motor Vehicles. The DPPA provides a private right of action: "[A] person who knowingly obtains, discloses or uses information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States District Court." 18 U.S.C. § 2724(a). Plaintiff alleges that defendants improperly disclosed his personal information in violation of the DPPA.

The NVRA provides that a voter can register simultaneously while receiving or renewing a driver's license. "The purposes of this subchapter are -- (1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office." 42 U.S.C. § 1973gg(b)(1). The NVRA allows a voter to circumvent the process of going directly to the Board to register to vote. The statute provides that, "Each State shall include a voter registration application form for elections for Federal office as *part of* an application for a State motor vehicle driver's license. "42 U.S.C. § 1973gg-3(c)(1) (Emphasis added). Essentially, the

3

DMV takes a portion of the driver's license application and releases that information to the Board to register the applicant to vote. The information that is released to the Board then becomes a voting record and is wholly independent from a motor vehicle record.

The NVRA states that, "Each State motor vehicle driver's license application (including any renewal application) submitted to the appropriate State motor vehicle authority under State law *shall serve as* an application for voter registration with respect to elections for Federal office unless the applicant fails to sign the voter registration application." (Emphasis added) 42 U.S.C. §1973gg-3(1). Plaintiff attempts to define "shall serve as" to mean "to function" or "to act in a particular capacity." Plaintiff argues that a driver's license application used as a voter registration application means that they were intended to be one and the same. The court disagrees. No court has interpreted the DPPA to apply to anything that had such little relation to a Department of Motor Vehicles, and this court declines to do so.

The DPPA clearly defines a motor vehicle record as "any record that pertains to a motor vehicle's operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1). The information that the Board disclosed to Zelchekno meets none of those criteria. Had the plaintiff registered to vote in the normal course, he would not have been entitled to protection based on the DPPA. The only difference in the instant case is that plaintiff chose to register to vote while applying for a driver's license. The information is identical. The DMV disclosed no more information than was necessary to complete a voter registration form.

In O'Brien v. Quad Six 219 F. Supp. 2d 933, 934, (N.D. Ill. 2002), the court explained Congress's reasoning in passing the DPPA. The statute "seeks to control dissemination of

4

information collected using the coercive power of the state." Id. at 935. The court explained that disclosing information to the department of motor vehicles when applying for a driver's license or permit is "significantly less voluntary" than disclosing information to private businesses or organizations. Id at 934. In the instant case plaintiff repeatedly overlooks the fact that he voluntarily disclosed his personal information to the Board by registering to vote. In doing so he transferred information to the Board to create an entirely new voting record that was, from then on, under the control of the Board. After that, he was not entitled to protection under the DPPA with respect to the information stored and retained by the Board as a voter registration record.

In Mattivi v Russell 2002 WL 31949898 at *2 (D. Colo. Aug 2, 2002), the court decided whether a report obtained from the Colorado State Patrol was a "motor vehicle record" under the DPPA. The court rejected the plaintiff's argument and concluded that the Colorado State Patrol was an agent of the Department of Motor Vehicles, and that the police report was not a motor vehicle record because it was not "issued by a department of motor vehicles." Id at *3.

In the instant case, plaintiff does not even allege that the Board was acting as an agent of the DMV. He is attempting to argue that the voter registration application is a motor vehicle record. This, as has already been shown, is incorrect. Quite simply, Congress chose to specifically make the DPPA apply to records coming from the DMV and pertaining to a motor vehicle license or permit. Voter registration records are neither.

## **CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss for failure to state a claim is granted pursuant to Fed. R. Civ. P. 12 (b)(6).

**ENTER:** **September 29, 2008**

_____
**Robert W. Gettleman**
**United States District Judge**

5